# IN THE UNITED STATE DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY

No.: *1:12CV-124-M*

| | | |
|---|---|---|
| **JOHN DANIEL TATE;(\*)** | ) | |
| | ) | |
| Plaintiff(s) | ) | |
| **Vs.** | ) | **VERIFIED COMPLAINT FOR DAMAGES** |
| | ) | **DEMAND FOR JURY TRIAL** |
| **THE STATE OF TENNESSEE, Gov.** | ) | |
| **Haslam;  Office of Attorney General,** | ) | |
| **Robert E. Cooper;** | ) | |
| | ) | |
| **"PROBATE DIVISION" of the Davidson** | ) | |
| **County Circuit Court, D. RANDY** | ) | |
| **KENNEDY as both Judge and Ministerial** | ) | |
| **Officer/Agent/Superior Guardian;** | ) | |
| | ) | |
| **DAVID Ǝ TATE**, individually and as | ) | |
| **CONSERVATOR/Appointee/Agent of** | ) | |
| **and for the "Probate Division";** | ) | |
| | ) | |
| **DAVID WARREN VANDER SCHUIT;** | ) | |
| | ) | |
| **EKATERINA JOANNA TATE;(\*\*)** | ) | |
| | ) | |
| **MR. PAUL T. HOUSCH,** Attorney | ) | |
| at Law; | ) | |
| | ) | |
| **THE VANGUARD GROUP;** | ) | |
| | ) | |
| **MR. MICHAEL HOSKINS,** Attorney | ) | |
| at Law | ) | |

**COMES NOW** Plaintiff, John Daniel Tate *pro se* and relying upon *Haines v. Kerner,*

404 U.S. 519 (1972), who verifies, affirms and alleges as follows, that;

---

(\*)      **d/b/a - Back Door To Heaven Music Publishing (ASCAP); Come On In Music
Publishing (BMI); The Tate Music Group; Airstream Productions**, and individually.

(\*\*)     Incorporated by reference are any one of a myriad of aliases used by Ekaterina.

## JURISDICTION

Jurisdiction in this matter is founded upon diversity of citizenship under 28 U.S.C. § 1332; federal question 28 U.S.C. § 1331; civil rights elective franchise 28 U.S.C. § 1343; creation of remedy 28 U.S.C. § 2201; and, supplemental jurisdiction 28 U.S.C. § 1367.

## VENUE

Venue is proper in this District under 28 U.S.C. § 1391(c)(2). Plaintiffs are residents of Kentucky, the amount in controversy exceeds the jurisdictional requirement of seventy-five thousand ($75,000.00) dollars, and each of the Defendants are residents of States' other than Kentucky.

## CONSTITUTIONAL PROVISIONS INVOLVED

First, Fourth, Ninth and Fourteenth Amendments of the U.S. Constitution.

## FEDERAL STATUES INVOLVED

42 U.S.C. § 1983; 42 U.S.C. § 1985; 42 U.S.C. § 1986; The Americans' With Disabilities Act 1990 (as amended) 42 U.S.C. § 12101 et seq. and in particular Title II of the Americans' With Disabilities Act 42 U.S.C. § 12132 et seq.; and 15 U.S.C § 1692 The Fair Debt Collections Practices Act.

## FACTS

1.   Plaintiffs are; those various d/b/a entities engaged in music production and an accomplished singer, songwriter and independent artist whose principal place of business was once Nashville and has now been for the past two (2) years, and because of the following events and occurrences, Kentucky.

2.   Plaintiffs hold numerous copyrights, professional licenses, contracts, and a catalog of intellectual properties which for years have provided and continue to provide Plaintiffs with

residual domestic royalty incomes.

3. Long since established as music production entities modestly successful in their own right -- in September 2001 in his own right Plaintiff John Daniel Tate [hereinafter JDT] "allegedly" married and in due course fathered two daughters with his "wife". In due course of the marriage, Plaintiffs' paid the wife's tuition, training and licensure to become a real estate agent and together Plaintiffs' and the wife made a bit of money developing, selling and renting real estate. The Plaintiffs' and the wife maintained a specific "real estate account" for these joint endeavors, yet this was principally the wife's career while Plaintiffs wrote music and promoted the music production and entertainment career. Following the birth of the second daughter the wife insisted that JDT quit smoking cigarettes, and JDT sought a course of smoking cessation treatment under which he was prescribed "ZYBAN". While taking the prescribed ZYBAN JDT suffered adverse reactions which in turn caused him to relapse back to alcohol and recreational drug use after eighteen (18) years of sobriety. In due course, the marriage became strained – JDT learned of "skeletons in his wife's closet" – and in February 2005 he filed for divorce on grounds of bigamy. JDT was granted an "absolute divorce" in May 2006.(1)

4. At all times relevant to the events and occurrences giving rise to this cause of action, Plaintiffs' maintained a recording studio at 5909 Old Harding Pike, Nashville, TN. 37205, where likewise was maintained a collection of guitars and other instruments, state of the art recording equipment and tools of the trade, and professional awards and accolades including without limitation a number of Gold and Platinum records.(2)

---

(1)  JDT has returned to the trial court on this matter seeking the declaration and annulment of the unlawful and *void ab intio* bigamous relationship.

(2)  Plaintiff likewise maintained a Tennessee residence in a portion of this structure.

3

5.   At all times relevant to the events and occurrences giving rise to this cause of action and continuing to date herein, JDT -- who is estranged from the mother of his two daughters -- in trying to keep peace and appease what were the coercive and repeated threats from Defendants Ekaterina and David E. Tate that JDT "would not see his daughters again" -- was coerced into attending various therapy/treatment programs.

6.   On or about June 13, 2007, having returned to Nashville from a therapy/treatment retreat in Antigua, JDT learns from Defendant David Tate that a "life/recovery-coach" – known to Plaintiffs'(3) to be Defendant David Warren Vander Shuit – had been engaged to come to Nashville and "coach" JDT on a path of life recovery.  Once again, to appease and keep  peace under the coercive threats of "never seeing his children again", JDT was amenable to the visiting "coach", picked him up at the Nashville airport upon his arrival on or about June 12, 2007, and because JDT knew him personally, invited him into his home and studio.

7.   On or about June 15, 2007, JDT, having been gone from the studio/residence, returned to find Defendants David E. Tate(4) [hereinafter David] and David Warren Vander Schuit [hereinafter David Warren] at the kitchen table waiting to engage him upon his return. While at Plaintiffs' Nashville studio/residence Defendants resorted to and utilized continued and repeated threats involving JDT's access to and association with his children, and encouraged him to again consider entering an "Indian Sweat" retreat in Arizona, all the while portraying to JDT a good-faith concern for his well-being. Ultimately, and after several hours of badgering and

---

(3) David Warren Vander Shuit was known to Plaintiffs' as a "would-be" singer songwriter that Plaintiffs' had met years previously while residing in Los Angeles.

(4) David is a resident of Shelby County, Memphis Tennessee, a nearly four (4) hour travel to Plaintiffs' Nashville studio/residence. He made contact with Defendant David Warren after having somehow gained access to Plaintiffs' email account where he found David Warren emailing the Plaintiffs.

verbal assaults -- during which the Defendants' plied JDT with sufficient amounts of alcohol [vodka] to intoxicate him, alcohol which they themselves left the premises and went and purchased -- JDT temporarily agreed to comply – once again – to the Arizona "Indian Sweat Ceremony". In order to facilitate what was expected to be a few weeks in therapy, the Defendants encouraged JDT to sign a power-of-attorney [POA] which David wrote on a brown grocery sack. Believing in his brother's good-faith that he was simply going to "pay his bills" – the few that were not in fact already scheduled through Plaintiffs' bank on auto-pay – JDT agreed to and signed a very limited power of attorney.

8. In the days following Plaintiffs' learned JDT's brother/David had taken unexpected and unauthorized liberty with the POA authority and had in fact used it, and forged or otherwise altered copies of the same, to gain access to and seize all of Plaintiffs' local bank accounts and he had likewise re-directed and gained control over all of Plaintiffs' mail. This discovery led JDT to cancel the Arizona trip, and likewise send the "coach" packing back to L.A.

9. In due course of the ensuing events and occurrences over the following weeks the Plaintiffs' verbally and repeatedly rescinded the POA authority of David and yet while JDT and his brother squared-off as adversaries, David refused to return Plaintiffs' the monies and properties and continued to exercise POA authority over Plaintiffs' substantial and valuable properties and income. In the heat of this issue between Plaintiffs' and David, JDT recalls vividly one day David stating; "[I] won't be done with you until you are living under a bridge pushing a shopping cart."

10. In addition to Plaintiffs' Tennessee bank accounts and properties, JDT's retirement and investment accounts were held by the Defendant "Vanguard". At all times relevant hereto the events and occurrences giving rise to this cause of action, the Vanguard account held a

balance in excess of seven-hundred thousand ($700,000.00) dollars.(5)

    11. On or about July 7, 2007 JDT was again accosted by David who this time was

accompanied by JDT's sister, her husband and Defendant Ekaterina all of who again – pitting

and threatening JDT with his daughters – were coercing JDT into a therapy/treatment program.

On this occasion JDT agreed to nothing, demanded the meddling stop and likewise demanded,

again, that David cease and desist with holding himself out as an authorized POA and return to

Plaintiffs' the monies and properties.

    12. In the weeks and months following Plaintiffs attempted repeatedly to communicate to

David and regain control of the monies and properties, yet David would not speak to or

communicate with Plaintiffs and animosities were growing all around JDT as he worked

diligently to maintain both his father/daughter relationship and his professional career.

    13. On or about November 2, 2007 at or about 1pm/2pm JDT answered a knock at the

door of his Nashville residence whereupon he is met by Attorney Robert Stratton who is

accompanied by two Metro police officers – hands on weapons standing ready while attorney

Stratton explains that he has been appointed "guardian ad litem", he reads to JDT the legal

document/petition filed by David seeking to establish conservatorship of Plaintiffs [attached

Exhibit A], and the notice of hearing [attached Exhibit B], leaving a copy of each with JDT

before advising him to hire counsel, and the three then leave without incident.

    14. Unable to access any financial resources to hire counsel due to David's unauthorized

control under the various POA instruments he was flaunting since June 15, 2007, and in due

---

(5) Plaintiffs' were likewise well insured, enjoyed a comfortable annual income, was
relatively debt-free aside of credit cards which were used for convenience and always
paid in full each month.  Plaintiffs' enjoyed an Eight-Hundred-plus (800+) credit score.

course, Plaintiffs attended the November 14, 2007 scheduled hearing in the Defendant "Probate

Division", unrepresented by legal counsel, and wherefrom JDT was immediately taken into

custody and involuntarily committed to the inpatient psychiatric unit of Vanderbilt-Stallworth

Hospital.(6) [attached Exhibit C – Supplemental Order] After six (6) days in the locked psych

unit of Vanderbilt JDT was transferred to an "extended care facility" – the name of which

JDT does not immediately recall. On the evening of this transfer JDT simply walked away

from the extended care facility and he remained on the "lam", so to say, for approximately three

(3) weeks after which he was contacted and advised by an "appointed attorney ad litem"

that a "Writ of Body Attachment" had been issued – and with this in mind JDT negotiated

his admission for twenty-eight (28) days to the Cumberland Heights therapy/treatment program

in lieu of the plan of Defendants that JDT enter a program in Boston for eighteen (18) months –

and still JDT is being taunted and tormented by the Defendants with threats that he would never

see his daughters again unless he complied.

    15. Having completed his stay at Cumberland Heights and at a January 7, 2008 hearing in

the conservatorship proceeding – JDT, facing a second "Writ of Body Attachment" then agrees

to an additional thirty (30) day program in California, yet, still under threat and coercion.  JDT

returned to Nashville in March 2008 only to find himself ordered back to California – this time

to a half-way house – in June 2008 where after a week he was alleged to have violated house

rules and asked to leave, which he readily and happily did accommodate the request and left and

yet remained in California.

---

(6) Exhibit B "Notice of Hearing" specifically cites a Title 34 conservatorship proceeding
and yet Exhibit C – Supplemental Order from the hearing evidences an order of involuntary
psychiatric commitment under Title 33.

16. While in California – and having been in search of legal counsel since the inception of this matter – an attorney acquaintance of Plaintiffs' made a phone call to the appointed attorney ad litem back in Nashville, and in the days/weeks following the attorney ad litem sought and was granted his dismissal from the case. Additionally, while in California Plaintiffs ran into an old acquaintance, Larry Brister, who informed Plaintiffs of an recent occasion when he ran into David Warren Vander Shuit who himself divulged to Larry that he and David Tate had, without repeating Larry in detail, tricked and screwed Plaintiffs. Plaintiffs requested of Larry an affidavit, and in due course Larry did in fact provide his affidavit. [attached Exhibit D]

17. Additional facts will be provided as needed below, yet in due course Plaintiffs' had made their way back to Nashville by the end of 2008 and while struggling to recapture control of his life and secure legal counsel – in August 2009 JDT is contacted by Defendant Attorney Michael Hoskins who claimed to have found JDT vis a vis a "Craig's List" advertisement and who, for five thousand ($5,000.00) dollars cash, offered his "mercenary" services. The money was paid by Plaintiffs, and no receipt or record of the payment was ever made.

18. In and during his relationship with Defendant Hoskins, JDT learned for the very first time that on October 23, 2007, Defendant(s) David Tate and Paul Housch had and attended an ex parte hearing with the Defendant(s) "Probate Division" and D. Randy Kennedy and that from this ex parte hearing Defendant David Tate had been appointed "Temporary Conservator" of both JDT's person and estate, which included the d/b/a entities. [attached Exhibit E](7)

---

(7) Plaintiff sought and secured – in the absence of an official court reporter being present to create a record of the proceedings – the courtroom security digital audio video recording of the ex parte proceedings. Incorporated by reference herein and in their entirety the audio video recordings are available on the world wide web/ internet at – http://www.youtube.com/watch?v=BUtwQ3-UtPg&feature=relmfu and, http://www.youtube.com/watch?v=vf3FGv9mFXg

19. On or about May 24, 2010, the Defendant "Probate Division" found JDT to be "allegedly" restored, and nun pro tunc, no longer disabled. (attached Exhibit F)**(8)**

20. On or about September 7, 2010 the JDT was adjudicated indigent by the Defendant "Probate Division".

21. On or about February 22, 2011, the Defendant "Probate Division" approved the final accounting of the appointed conservator [attached Exhibit G] which states at pg. 2 ¶ 1 (cont. from pg. 1 ¶ 1);

> "…… The Court hereby denies the Temporary Conservator's
> Motion to be Discharged.  The Court hereby grants the
> Temporary Conservator's request in open Court to Withdraw
> the Temporary Conservator's Motion to Close the Conservatorship. …"

and on November 15, 2011, the conservator filed his "Annual Status Report of the Fiduciary".

---

**(8)** Yet Exhibit E contains no medical evidence whatsoever of legal incapacity.

## ALLEGED VIOLATIONS

Plaintiffs reiterate the above and foregoing and hereunder as Count One – against Defendants State of Tennessee, Governor Haslam, Attorney General Cooper, "Probate Division", D. Randy Kennedy, and David E. Tate and, alleges as follows that;

22. The State of Tennessee is a public entity as defined by 42 U.S.C. § 12131(1)(A),(B) of The Americans' With Disabilities Act, Governor Haslam is the elected executive official responsible for the implementations and administration of the entities services, programs and activities and, Attorney General Cooper is the appointed administrative executive responsible for advising the entities executive, legislative and law enforcement bodies as the same concerns the legality and constitutionality of the entity's  public acts, statues, codes, regulations and the services programs and activities provided by the entity to the citizens' of the State of Tennessee. Defendant Attorney General Cooper is the "peoples' attorney".

23. By virtue of Tennessee Code 34-1 et seq. the Defendant State of Tennessee provides, under its authority as ***parens patraie***, the benefit of the services, programs and activities of "conservatorship", and to those Tennessee citizens who meet the requisite constitutional conditions precedent as adjudicated to exist in fact by a court of competent jurisdiction and in proceedings which comport with the requirements of due process of law and equal protection under the law.   The Defendant State of Tennessee, its officers, agents and employees, and whether individually and/or collectively, owe to those persons adjudicated 'wards' and placed under conservatorship the common law duty to protect.

24. The Defendant(s) "Probate Division" and D. Randy Kennedy are and represent a public entity as defined by 42 U.S.C. § 12131(1)(A),(B) of The Americans' With Disabilities Act entrusted by the Tennessee legislature with the duty of giving effect to, and administering to, those conservatorships appointed under TN Code 34-1 et seq.

25. Defendant David E. Tate is and represents a public entity as defined by 42 U.S.C. § 12131(1)(A),(B) of The Americans' With Disabilities Act, entrusted by his appointment - and by virtue of that authority vested to his appointed public office by the Tennessee Legislature under TN Code 34-1 et seq., and those ascribed him by and under the order of his appointment – to serve as conservator of both the person and properties of JDT.  At all times relevant hereto, Defendant David Tate acted under color of law and office and, both as a publically appointed ministerial agent of the court and/or individually as if an authorized agent acting under a power of attorney as set forth by TN Code 34-6 et seq.

26. The Plaintiff DJT is a qualified individual with a disability as defined by 42 U.S.C. § 12131(2), and likewise an 'adult ward' adjudicated to be disabled and placed under conservatorship by the Defendant(s) "Probate Division" and D. Randy Kennedy who, once

adjudicating DJT disabled, appointing Defendant David Tate conservator and while sitting as "Superior Guardian", are tasked with duty of managing and administering to the ongoing and daily ministerial administration of the conservatorship trust.

27. The Defendant "Probate Division" is an administrative body and forum of limited jurisdiction which is not a constitutional or statutory "court" but rather a ministerial office which, in conservatorship proceedings, serves the ministerial capacity as "Superior Guardian" ultimately responsible for the wards' and estates under its administration. Defendant, D. Randy Kennedy serves as ministerial agent of the ministerial office, and he too is ultimately responsible for his wards' and their estates which are under his direct care, custody and control.

28. Whether on its face and/or otherwise as applied to JDT/Plaintiff, Tennessee Code 34-1- et seq. is unconstitutional in that;

> a).     in practice and as a "civil action" a conservatorship proceeding commences, as did JDT's, upon an unconstitutional presumption of incapacity/incompetency, and does so in violation of due process of law and equal protection under the law;

> b).     TN Code 34-1-121 - Powers of court -- Additional actions – Waiver of requirements – Compromise is unconstitutionally overbroad and subjective in its use and reliance on "the best interests" standard in that, as applied to Plaintiff and adults deemed disabled and in violation of due process of law and equal protection under the law, the use and reliance on the "best interest standard" denied and deprived Plaintiff of his right to privacy and personal autonomy, and, additionally, the use and reliance on the "best interest standard" is likewise contrary to the rule of law governing "surrogate-decision-making" as set forth by the U.S. Supreme Court in *Cruzan v. Director Missouri Dept. of Health*, 497 U.S. 261 (1990)

29. Whether on its face and/or otherwise as applied to Plaintiff/JDT and because of his disability and in violation of Title II of The Americans' With Disabilities Act 1990 (as amended) 42 U.S.C. § 12132, Tennessee code 34-1 et seq. is unconstitutional and discriminatory in that

'adult wards', Plaintiff herein included, because of their disability and in violation of due process

of law and equal protection under the law are excluded from, denied and deprived, their equal

and meaningful access to the benefit of the services, programs and activities of the Tennessee

Judicial System, and in particular, access to the benefit of an equal and meaningful access to an

adequate review and appeal process.

30. On October 23, 2007, in ex parte proceedings before the Defendant "Probate

Division", unbeknownst to Plaintiffs and in complete absence of notice and/or any opportunity to

be heard, in violation of due process of law and equal protection under the law, Plaintiff/JDT was

adjudicated to be disabled/incompetent and placed under the conservatorship of both his person

and estate, and a guardian ad litem is/was appointed.

31. Defendant(s) David E. Tate/appointed conservator and D. Randy Kennedy/ministerial

agent/Superior Guardian and whether individually and/or collectively in concert and in silent

acquiescence –did knowingly, intentionally and with deliberate indifference in violation of due

process of law and equal protection under the law and, because of Plaintiff's disability and in

violation of Title II of the Americans' With Disabilities Act 42 U.S.C. § 12132 – failed and

refused to protect and preserve – to the Plaintiff exclusion and manifest prejudice – Plaintiff's

right to appeal and his right to equal access to an adequate and meaningful review and appeal

process as the same relates to the October 23, 2007 conservatorship appointment [Exhibit E].

32. In addition to a statutory scheme which does not pass constitutional muster, the

systemic customs, practices, policies and procedures utilized by the Defendant(s) "Probate

Division" and D. Randy Kennedy, whether as a whole and/or as simply applied to JDT in

and during the course of his conservatorship and whether in and during the adjudicatory phase

and/or the ministerial daily administrative phase, is not a system of customs, practices, policies

and/or procedures which provides for impartial tribunals and/or procedures which are compatible

with due process of law and/or equal protection under the law(9) and which, among other things

> i)     Result in an unconstitutional and impermissibly high number of erroneous decisions and conservatorship appointments;

> ii)    Result in an unconstitutional and impermissibly high number of temporary, emergency, and emergency temporary, conservatorship appointments and erroneous decisions, judgments and orders;

> iii)   Result in an unconstitutional and impermissibly high number of judgments and orders which evade judicial review and appeal;

> iv)   Result in an unconstitutional and impermissibly high number of erroneous decisions which evade judicial review and appeal and which, causing irreparable injury, harm and, grave deprivation of fundamental rights and liberty, repeat themselves;

> v)    Without a rational basis, grossly disparage, prejudice and discriminate against persons who are adjudicated to lack legal capacity in a "civil action" in relation to and as opposed to all others who's incapacity is at issue of adjudication; and,

> vi)   Result in an unconstitutional and impermissibly high number of conserved 'wards' who, entering the conservatorship process while possessing assets and estates, are left indigent by the conservatorship.

33. In violation of due process of law and equal protection under the law, and by virtue of

the particular conservator appointed to JDT, namely Defendant David Tate, Plaintiff has

---

(9) The Defendant "Probate Division" is, and in particular while under the direct supervision and control of Defendant Kennedy, in practice subject to political, social, familial, and financial suasion and a forum where, while the Constitution theoretically provides for due process rights, due process rights are regularly and routinely ignored in practice and where in practice the 'ward' never does realize nor receive their right to be protected. A practice of liquidation takes precedence over any consideration for preservation and conservation.

been denied, deprived and, because of his disability excluded from his equal access to the

benefit of the services, programs and activities of, his right to "conflict-free representation" by a

conservator free of conflicts of interest and inherent conflicts of interest in keeping with the

Plaintiff's right to be protected.

34. On or about November 2, 2007, JDT received a "Notice of Hearing" -- on what he

learned in August 2009 began as the October 23, 2007 ex parte appointment of the conservator

and, the guardian ad litem who in turn served and read to JDT the "Notice of Hearing" and

suggested he seek legal counsel.

35. On November 14, 2007, and while unrepresented by legal counsel(10), JDT attended

the Hearing/trial date seeking a continuance in order that he could seek and secure legal counsel.

However, rather than granting any continuance Defendant(s) "Probate Division" and Kennedy

did -- in violation of due process of law and equal protection under the law, without sufficient

notice and/or opportunity to be heard, without any appointment of counsel and in clear absence

of jurisdiction(11) --, involuntarily committed JDT against his will and to the locked psychiatric

unit of the Vanderbilt-Stallworth Hospital.

---

(10)    Bearing in mind Plaintiff is already, unbeknownst to him, under conservatorship
And with the POA issues involving David Plaintiff had absolutely no access to his own
personal resources and finances that he could readily retain counsel for his defense.

(11)    Tennessee conservatorship code [Title 34] and the code governing involuntary
psychiatric commitment [Title 33] are two separate and distinct proceedings.  Plaintiff
was afforded none of the due process protections and constitutional considerations of
an involuntary psychiatric commitment proceeding.  Defendant(s) "Probate Division"
and Kennedy had no petition for involuntary psychiatric commitment before them, nor
did the Defendant(s) have before them any medical evidence whatsoever - least of all
medical evidence which, by clear and convincing evidence, established in fact the
existence of those requisite constitutional conditions precedent governing involuntary
psychiatric commitment.

36. Defendant(s) David E. Tate/appointed conservator and D. Randy Kennedy/ministerial agent/Superior Guardian and whether individually and/or collectively in concert and in silent acquiescence –did knowingly, intentionally and with deliberate indifference in violation of due process of law and equal protection under the law and, because of Plaintiff's disability and in violation of Title II of the Americans' With Disabilities Act 42 U.S.C. § 12132 – failed and refused to protect and preserve – to the Plaintiff exclusion and manifest prejudice – Plaintiff's right to appeal and his right to equal access to an adequate and meaningful review and appeal process as the same relates to the November 14, 2007 Supplemental Order [Exhibit C].

37.    As the direct and proximate result of the above and foregoing and because of his perceived disability the JDT has been denied and deprived his liberty, denied and deprived his personal privacy and autonomy, subjected to and victimized by unreasonable searches and seizures of both his person and his personal properties, financial resources and, his purely personal papers and those communications sent to Plaintiffs vis a vis both the U.S. Mail and/or electronic email which Defendant(s) "Probate Division" and Kennedy ordered diverted and kept from Plaintiffs.

38. As the direct and proximate result of the above and foregoing, JDT has been denied and deprived due process of law and equal protection under the law and, because of his perceived disability, excluded from his equal access to the courts, to a meaningful and adequate review and appeal process, and to the benefit of the services, programs and activities of the same, that his claims and/or defenses could be fairly and fully litigated to finality.(12)

---

(12)    This is a situation where JDT finds himself, in the absence of adequate pre-deprivation due process protections, without any access to a post-deprivation remedy and where countless ministerial/administrative decisions, judgments and orders in the conservatorship case, evade review while repeating and reoccurring.

## COUNT II

Plaintiffs reiterate the above and foregoing in its entirety and hereunder as Count Two – Against Defendant(s) David E. Tate and those in privy and concert with him, allege as follows that;

### A

39. On or about June 24, 2007 and after being gone for a couple days, Plaintiff returned to his studio/residence to find his brother David sitting at the kitchen table. [Fact ¶ #7 above pg. 4] Accompanying David was "recovery/life-coach" [Defendant David Warren] that Plaintiff knew and recognized from Los Angeles California.(13)  Together, David and the "life-coach" sat with Plaintiff for hours encouraging him to consider again entering a therapy program yet doing so all the while plying Plaintiff with alcohol and, tormenting and threatening Plaintiff that if he did not enter therapy voluntarily he was not going to see his daughters with whom he had, and still has, a healthy and viable father/daughter relationship.(14)  Ultimately, Plaintiff relented and agreed, at which time David and the "life-coach" then re-focused their focus of attention and discussion to Plaintiff's need for a "Durable Power of Attorney" [DPOA] so that his affairs could be maintained on his behalf while Plaintiff was in therapy. [Fact ¶ #7 above pg. 4-5]

40. At all times relevant to and between June 15, 2007 and October 23, 2007, in spite of Plaintiffs' numerous and repeated verbal rescissions, protestations and demands that David cease

---

(13)    David Warren was present for a fee and as a "key man" in guiding and assisting David in orchestrating and executing his scheme to capture control of Plaintiffs' funds and estate properties.

(14)    In the course of the events and occurrences complained of by JDT he has suffered – as have his children – irreparable injury, harm, deprivation, infringement and frustration of his First Amendment right to freely associate in privacy, assemble in privacy, and in keeping with the Ninth and Fourteenth Amendment rights associated with family – deprivation, infringement and frustration of his right to commune in unity and privacy as family and in keeping with a healthy and stable father/daughter relationship.

and desist holding himself out to be authorized under the DPOA, and, demands to return to

Plaintiffs' the property and control over property David was unauthorized in controlling, David

gained access to and control over – denying and depriving Plaintiffs' of use and benefit -- of

nearly two-hundred thousand [$200,000.00] dollars of Plaintiffs' income and savings from

various local bank accounts.

41. To date herein these monies and properties have never been accounted for and have

been converted by David to his own use and benefit and/or the use and benefit of those in privy

and concert with David, including without limitation and perhaps among others,  JDT's ex

(Defendant Ekaterina), Defendant David Warren, and Defendant Attorney Paul T. Housch.


**B**


42. Defendant David Tate accessed under the ill-gotten DPOA [¶¶ #40, #41 above],

utilized and converted to his own use and benefit, approximately twenty-five thousand

[$25,000.00] of Plaintiffs' funds and hired Defendant Attorney Paul T. Housch who, in concert

with David, engaged in a scheme of abusing and maliciously using the judicial process with the

ulterior motive of unjustly enriching themselves with a financial benefit or remedy unavailable

and unenforceable as a matter of law, and/or, with a benefit or remedy which is otherwise

available were it not for Defendants' malicious and fictitious means of seeking to attain said

benefit and/or remedy.

43. In keeping with Defendants' intended scheme and on October 23, 2007 the

Defendants' appeared ex parte before the Defendants "Probate Division" and Kennedy where

Defendants sought and secured – upon known and admitted untruths and in a complete absence

of medical evidence or testimony -- without affording to JDT any notice and/or opportunity

to appear and be heard – the appointment of David as conservator of both the person and estate of JDT with the express authority and direct order "**to preserve and protect the assets**" of JDT.

**C**

44. On November 14, 2007, Plaintiff/JDT – already under conservatorship and not even knowing so – appeared, unrepresented by legal counsel, before and in the company of Defendants "Probate Division" and Kennedy in their ministerial office as "Superior/Supreme/ Ultimate Guardian"; Defendant David Tate in his capacity as appointed conservator and agent of the "Superior/Supreme/Ultimate Guardian"; and, Defendant Attorney Housch (counsel for the appointed conservator) -- under the watchful eye of a Court-Appointed Guardian Ad Litem – where, because of Plaintiff's perceived disability, Plaintiff was – in violation of due process of law and equal protection under the law and, in clear absence of jurisdiction – unlawfully and unjustly involuntarily committed to a locked psychiatric hospital, deprived of his liberty, isolated deprived and denied access to the courts and an attorney, and, excluded from his benefit of equal access to the services programs and activities of his appointed conservator, his Superior/ Supreme/ Ultimate Guardians, and, the Tennessee Courts including equal access to a meaningful and adequate review and appeal process.

**D**

45. The above **A, B,** and **C** having occurred and in place – Plaintiff locked in the psych hospital -- Defendant(s) David and Ekaterina, accompanied by perhaps other unknown and yet to be known persons, made their way to Plaintiffs' studio/residence and immediately removed all of Plaintiffs' state of the art recording equipment; JDT's three vehicles and other items of

18

personal, business and sentimental valuables.(15) Many of these items have been lost and/or

converted by Defendants, and while removing the recording equipment significant loss and

damage was done to the "professional rigging", "cabling/connecting" destroying copious lengths

of specifically engineered wiring and recording components.  In all, by the time JDT returned

to the studio/residence in January 2008 and found the above – the locks to the structure had been

changed and Defendant(s), and those in privy and concert with Defendants, had free and

unfettered access to all of Plaintiffs' properties and his personal and business papers to garner

and take for themselves what they wished, and they did.

46. In furtherance of Defendants(16) scheme to cause and achieve financial ruination of

Plaintiffs and the conversion and ultimate control of Plaintiffs' properties, intellectual properties,

copyrights, licenses and like professional interests -- originally facilitated by Defendant Attorney

Housch, orchestrated, conducted and synchronized by Defendant Kennedy who in complete

absence of jurisdiction and those requisite constitutional conditions precedent and while denying

and depriving JDT of due process of law and equal protection under the law, including without

limitations the right to a fair and impartial judicial process – deliberately and indifferently to the

rights and interests of his 'ward' and in response to a - "[T]hank you your Honor" by Defendant

Housch, Defendant Kennedy states clearly and unequivocally, **"… it's no, no problem, I am**

**glad to do it …"** [referring to appointing the conservator in ex parte proceedings without

---

(15)    The state of the art recording equipment alone exceeded two-hundred-fifty
thousand dollars in value, excluding the damaged rigging and cabling damaged and
destroyed.  Also missing significantly, was Plaintiff's safe which held cash, jewelry,
heirlooms, antiques and collectibles valued at approximately $70 to $100 thousand
dollars.  Left behind by Defendants' was Plaintiff's guitar collection, a Steinway
piano and common household articles of inconsequential value.  Anything of value,
including two original "DisFarmer" collectible photographs are/were missing.

(16)    Bearing in mind this is an ex-wife and sibling brother scheming in concert.

service, notice, and/or an opportunity to appear and defend by Plaintiff ] (see pg. 8 footnote #7

above  http://www.youtube.com/watch?v=vf3FGv9mFXg – official unedited courtroom security

audio video at mark 11:12 to 11:17 ) "… **were full service, just like a 7/11 were here all the**

**time, almost."** (*id.* at mark 11:20 to 11:27) **"Mr. Tate we look forward to seeing you back in**

**here, you and your brother ….. Mr. Housch will guide you right through this, it might seem**

**like a maze but he'll get you from point A to point B, and we'll take care of you when you**

**come back in. See you later."** (*id.* at mark 13:10 to end) -- and in furtherance of Defendants

intended goal and objective, as pronounced and stated by Defendant Housch as facilitator by

agreement "… <u>to appoint a temporary conservator to contact various institutions, i.e. Safeguard,</u>

<u>I mean Vanguard, which is out of state where most of the funds are maintained</u>." (see – pg. 8

FN#7 above - http://www.youtube.com/watch?v=BUtwQ3-tPg&feature=relmfu at mark 1:48 to

2:16) which in the weeks and months to follow, with the aid, comfort and gracious blessing of

Defendant Kennedy(17) sitting as "Superior/Supreme/Ultimate Guardian" of and for Plaintiff,

came to fruition and left Plaintiff indigent (see Fact ¶ 20 pg. 9 above) and the conservatorship

---

(17)     Defendant Kennedy is/was a principal of the "Kennedy & Brown Law Firm" and
ascended to his current public office as "Superior/Supreme/Ultimate Guardian" 8 years
ago. Attorney Brown of "Kennedy & Brown Law Firm" is on record with the "metro
council" seeking the councils nomination and endorsement for his selection to the county
bench/bar. However,  the "Kennedy & Brown Law Firm" – which advertises openly and
notoriously in the yellow pages and "on line" [the internet] is not a registered business
entity in good standing with the Tennessee Secretary of State's Office.  In his public office
Defendant Kennedy – although unopposed in his re-election – has a quite sizable sum and
Interesting  list of campaign contributions (attached Exhibit  *H* ) and which includes both
Defendant Housch and the guardian ad litem appointed in Plaintiff's conservatorship, and,
It is these three, Kennedy, Housch and the appointed ad litem, **all** "from Hermitage" referred
 to by Defendant Kennedy in FN #7 above http://www.youtube.com/watch?v=vf3FGv9mFXg
at mark 12:22 to 12:40 - "You now it's all about concentration.  You get a Hermitage resident,
a lawyer 'and a former Hermitage lawyer' [pointing to himself] all in the same room and it's a
wonder …"

remains *"in fieri"*(18) (see Fact ¶ 21 pg. 9 above) – Defendant David Tate has -- knowingly,

intentionally, maliciously, in bad faith and repeatedly breached his fiduciary duties both as and

under the disputed POA and as appointed conservator and has, as the direct and proximate result

of such breaches while sharing his spoils with others including without limitations Defendants

Ekaterina, David Warren and Attorney Housch –

> **A.** converted to his own use and benefit and for the use and
> benefit of those in privy and concert with him, substantial
> properties -- both pre-conservatorship and in and during the
> conservatorship and whether accounted for and/or unaccounted
> for -- belonging to Plaintiffs and JDT's estate;(19)

> **B.** tortuously interfered with Plaintiffs'; contracts, copyrights,
> commercial licenses and the rights and marketability thereof;
> advantageous business and economic opportunities;(20) and,
> JDT's parental, family and parent child relationship;(21)

> **C.** intentionally inflicted extreme emotional distress.

---

(18)    Black's Law Dictionary 6ᵗʰ Ed. (1990) pg. 778 -- "... incomplete, inchoate."

(19)    In addition to those properties already set forth and discussed by inference, JDT
likewise had consigned a collection of original "DisFarmer" photographs to a gallery in
New York City.  With a value as high as two-hundred thousand ($200,000) dollars these
collectibles are unaccounted for and the gallery in New York refuses to communicate with
Plaintiff.

(20)    Defendant(s) have libeled, slandered, defamed the Plaintiffs' good name and
character to and within Plaintiffs' professional peer community, and have likewise left
un-responded and unanswered an untold number of license requests and inquiries which
represented to Plaintiff's substantial income and residual royalty income.  All told, and to
the best of Plaintiffs' knowledge - because no one will speak specifically on point –
Plaintiffs' professional career, at its phoenix and rising when the conservatorship began,
has been substantially diminished and irreparably harmed.

(21)    Defendant's have used and continue to use JDT's right of parental access to
and association with children as their pawns and emotional lever over hum in order
to coerce and intimidate him to comply with Defendant(s) "plan" to "help".

and which, in those instances where to date and still (see Fact ¶ 21 pg. 9 above) David is acting

as conservator and agent of the court, equate equally to deprivations of, and deliberate

indifference for, JDT's fundamental liberty, rights, and property under color of law, and in

violation of due process of law and equal protection under the law.

47. As the direct and proximate result of Defendants' abuse and malicious use of the

judicial process, their knowing and intentional scheme of practicing invited error – error that

Plaintiff, because of his perceived disability, never had equal, meaningful access to the benefit of

the services programs and activities of an adequate review and appeal process -- the Plaintiffs'

has suffered and continues to suffer to date, and will suffer into the future, actual and

consequential damages.

### COUNT III

Plaintiffs' reiterate the above and foregoing in its entirety and hereunder as Count Three

– against Defendant "Vanguard" and those in privy and concert with "Vanguard", allege as

follows that;

48. Plaintiff/JDT is the owner of various financial accounts he kept and maintained with

"Vanguard" (pg. 5 Fact ¶ #10) [The Vanguard Group 455 Devin Park Drive, Wayne, Penn

19087-1815]. See, Exhibit A pg. 10 ¶ 12.

49. Defendant "Vanguard", a licensed, registered and regulated member of the financial

industry and marketplace, owed to Plaintiff/JDT as a depositor a fiduciary duty and duty of care

commercially accepted and designed to and for specifically the protection of commerce and the

security of private deposits and depositors.

50. Defendant Housch admits and acknowledges that Defendant David E. Tate made contact with Defendant Vanguard in an attempt to gain information and access to Plaintiff's financial accounts (see http://www.youtube.com/watch?v=BUtwQ3-tPg&feature=relmfu at mark 1:48 to 2:16) and was advised by Defendant "Vanguard" that they could not act to meet his request without a court order.

51.  On October 23, 2007, and as set forth herein and above, Defendant David Tate secured his court order and subsequent orders which in due course where presented upon Defendant "Vanguard" -- and in the ensuing months Plaintiff's "Vanguard" accounts were accessed and drained of all monies and worth.

52. Defendant "Vanguard" has knowingly and intentionally participated and acquiesced in allowing the plundering of Plaintiff/JDT's accounts and resources and has further breached its fiduciary duty to owed to Plaintiff/JDT by the same and whether negligently or otherwise.

53. Defendant "Vanguard" failed to act in a commercially acceptable manner and with that degree of care commercially accepted and standard for financial institutions in that "Vanguard" knew, should have known and had every responsibility of knowing that under clearly established legal precedent and historical rule of law, a "probate court" do not enjoy nationwide and extra-territorial jurisdiction and an order out of a probate court in Tennessee is/was unenforceable, as a matter of law and public policy, in Pennsylvania and/or any person or entity outside the jurisdictional boundaries of the issuing probate court.

54. Defendant "Vanguard" has, whether knowingly, intentionally and/or as a result of negligent training of its agents and employees -- and/or lack of clear policy -- facilitated the injury, damage and conversion of Plaintiff/JDT's valuable properties and accounts and as the direct and proximate result of "Vanguard's" act and conducts Plaintiff/JDT has suffered the loss

23

of his funds, the loss of investment, use, growth and all opportunities and potentials for and of which Plaintiff's funds would and/or could provide to Plaintiff advantageous economic benefits.

## COUNT IV

Plaintiffs' reiterate the above and foregoing in its entirety and hereunder as Count Four – against Defendant Attorney Michael Hoskins and those in privy and concert with Defendant Hoskins, allege as follows that;

55. In or about August of 2009 and upon the initiative of Defendant Hoskin's personally – the Defendant approach and engaged Plaintiff – a man under conservatorship -- and asserted that for five thousand ($5,000.00) dollars he would get going on Plaintiff's case.  Plaintiff wired a portion of the monies to Defendant from Little Rock AR, and personally delivered to Defendant the remainder of the monies whereupon Defendant required of Plaintiff a signed agreement and told Plaintiff – "I will get you out of this conservatorship."

56. On May 24, 2010 – reported in the USA Today newspaper and quoting Defendant Hoskins – ""I figured he'd be let out when he didn't have another dollar to his name," said Michael Hoskins, a lawyer who now represents the songwriter. He said he would fight attempts to sell the songwriter's house to pay for legal fees."

57. In and during Defendants "alleged" representation of Plaintiff, Defendant made direct contact to and communicated directly with Defendant David Tate with the express intent and desire of acquiring a share of Plaintiff's "Vanguard" funds – thereby acquiescing in concert with David's conversion of Plaintiff's monies and defalcation of his estate.

58. Defendant Hoskins has breached his fiduciary duty to Plaintiff and likewise has breached the contract, whether express, implied or otherwise, by his knowing and intentional acts and conducts and by committing professional errors and omissions, whether negligently and or intentionally, and from which Plaintiff derived no benefit but rather suffered and continues to suffer a further and continuing wrong – because Defendant has yet to free Plaintiff from his conservatorship.

59. In spite of the fact that Plaintiff's conservator has yet to be discharged and his conservatorship closed (see Fact ¶ 21 pg. 9 above)) – Defendant Hoskins has, outside the conservatorship proceeding, commenced independent litigation, secured a summary judgment and seeks to execute and enforce the same by forcing the liquidation of Plaintiff's home, for a claim of legal fees in the sum of – and while in breach of fiduciary duty, contract and promise – approximately one-hundred-twenty-five thousand ($125,000.00) dollars.(22)

60. As the direct and proximate result of Defendant Hoskins's acquiescence in and participation with Defendant David Tate in gaining access to Plaintiff's "Vanguard" funds, together with Defendant's breaches of fiduciary duty, contract(23) and spoken promises Plaintiff has suffered and will continue to suffer going forward injury damages and losses both actual and consequential.

---

(22)    Defendant Hoskins collected previously, in addition to the original five thousand ($5,000.00) dollars, two hundred ($200.00) dollars for copies and costs, and a sum in excess of eighty-nine thousand ($89,000.00) for services and fees.

(23)    The express contract between Hoskins and Plaintiff, because Plaintiff presumably lacked legal capacity at the time of entering into the alleged "attorney/client" relationship, is *void ab initio* and unenforceable as against public policy.

## COUNT V

Plaintiffs' reiterate the above and foregoing in its entirety and hereunder as Count Five – against Defendant Attorney Michael Hoskins and those in privy and concert with Defendant Hoskins including, without limitation, Defendant Housch and those in privy and concert with Defendant Housch, alleges as follows that;

61. Conservatorship by its nature, character and purpose involves an estate administration and the identification and satisfaction of debts collected and paid by the estate of the 'ward' – who in this instance is the Plaintiff/JDT.

62. Defendant Housch is an attorney at law engaged in the practice of law wherein and under, whether in conservatorship proceedings and on behalf of conservatorship clients, and/or otherwise in the professional practice of Defendant's choosing, Defendant is a debt collector engaged in the collection of debts, and whether on behalf of his professional self and/or on behalf of others and third party clients.

63. Defendant Hoskins is an attorney at law engaged in the practice of law wherein and under, whether in conservatorship proceedings and on behalf of conservatorship clients, and/or otherwise in the professional practice of Defendant's choosing, Defendant is a debt collector engaged in the collection of debts, and whether on behalf of his professional self and/or on behalf of others and third party clients.

64. Defendants have, in violation of § 807 of 15 U.S.C. 1692(e), used false, deceptive and misleading representations and means to secure for themselves and the benefit of those in privy with Defendants – whether individually and/or collectively in concert with others -- the summary seizure of a substantial cash security for a debt and/or debts that does not and did not exist.

26

65. Defendants have -- whether individually and/or collectively in concert with others – in violation of § 807 of 15 U.S.C. 1692(e)(1) falsely represented or implicated that they are vouched for by the authority of the State of Tennessee, yet the Defendants knew, should have known and had every responsibility of knowing that the badge or facsimile of Tennessee authority conferred upon Defendants no obligation or legal authority whatsoever.

66. Defendants have --  whether individually and/or collectively in concert with others – in violation of § 807 of 15 U.S.C. 1692(e)(2)(A), intentionally misrepresented the character, amount and legal status of that debt Defendants purport to collect, and purport to collect on behalf of themselves and/or others.

67. Defendants have –  whether individually and/or collectively in concert with others – and whether on behalf of themselves individually and professionally and or on behalf of others – in violation of § 807 of 15 U.S.C. 1692(e)(7) used representations and false representations that "their alleged debtor" had committed crimes or other conducts intended to disgrace the consumer/"alleged debtor".

68. Defendants have -- whether individually and/or collectively in concert with others – and whether on behalf of themselves individually and professionally and or on behalf of others – in violation of § 807 of 15 U.S.C. 1692(e)(10), used deceptive means and false representations to collect a debt which in fact does not exist, and at no time prior to Defendants taking actions to collect their debts, in violation of § 807 of 15 U.S.C. 1692(e)(11), Defendants never once communicated to Plaintiff/JDT that Defendants sought to collect a debt. See also § 809, 15 U.S.C. 1692(g).

69. Defendants have -- whether individually and/or collectively in concert with others – and whether on behalf of themselves individually and professionally and/or on behalf of others including without limitations those in privy and concert with Defendants – in violation of § 808 of 15 U.S.C. 1692(f) used unfair and unconscionable means to secure for the benefit of Defendants' and those in privy and concert with Defendants the means and opportunity to "churn" Plaintiff's estate creating debt in Defendants' favor and in favor of those in privy and concert with Defendants' -- seizing and controlling hundreds-of-thousands-of dollars-plus, cash monies other properties converted and which rightfully belonged to Plaintiff herein and, cash monies to which no debt, security interest or lawful encumbrance vested in Defendants any right to collect Plaintiff's monies for and in satisfaction of any debt incurred by Plaintiff.

70. As the direct and proximate result of Defendants acts and conducts in violation of the FDCPA, Plaintiff/JDT has suffered the loss of his funds together with the loss of the use and benefit of those funds and the reasonable opportunities to benefit from his funds – leaving Plaintiffs' indigent and bankrupt.

## COUNT VI

Plaintiffs' reiterate the above and foregoing in its entirety and hereunder as Count Six – against Defendants David E. Tate; Ekaterina J. Tate; David Warren Vander Shuit; Attorney Paul Housch; Attorney Michael Hoskins and those in privy and concert with Defendants, alleges as follows that;

71. Plaintiff d/b/a(s) and Daniel John Tate are significantly accomplished both in the music production industry and in JDT's professional self. Both were extensively growing in career market presence when in 2006 and 2007 Defendants David and Ekaterina shadowed

28

Plaintiff/JDT as uninvited meddlers and intruders in Plaintiffs' professional affairs and personal life.  In due course of Defendants uninvited meddling Defendants invited and included Defendants David Warren, Attorney Housch and D. Randy Kennedy as participants in the intrusion and meddling, and after nearly two years of dealing with these Defendants on his own, Defendant Hoskins invited himself in aid of and assistance to Plaintiff.(24)

72. Defendants have, whether individually and/or collectively in acquiescence and concert and as intruders and uninvited meddlers in Plaintiffs' professional affairs and personal life, made in fact a nuisance in fact of themselves and interfered with, unreasonably, Plaintiffs' peaceful possession and quiet enjoyment of their properties.

73. As the direct and proximate result of Defendant's acts and conducts – and the nuisance in fact the Defendants represent and represented to Plaintiffs, the Plaintiffs' have suffered and continue to suffer unreasonable interference with and deprivation of their peaceful possession and quiet enjoyment of their properties.

74. As the direct and proximate result of the nuisance in fact posed and presented by Defendants -- whether individually and/or collectively in acquiescence and concert and as intruders and uninvited meddlers in Plaintiffs' professional affairs and personal life, Plaintiffs' have been forced to abandon and replace various properties, some of which are essential to Plaintiffs' mere survival, all of which Plaintiffs' once enjoyed – prior to the nuisance in fact arising – peaceful possession and quiet enjoyment.

75. As the direct and proximate result of the above and foregoing nuisance in fact and its effects and affects on Plaintiffs' – Plaintiffs' have suffered and continues to suffer actual

---

(24)    Plaintiff/JDT received no benefit whatsoever from the aid and assistance of Defendant Attorney Hoskins.

pecuniary and consequential damages, loss and injury including, without limitation, the loss of use, benefit, peaceful possession and quiet enjoyment of their properties both professional and personal.

**COUNT VII**

Plaintiffs' reiterate the above and foregoing in its entirety and hereunder as Count Seven – against Defendant D. Randy Kennedy individually and in his administrative and ministerial office as "Superior/Supreme/Ultimate Guardian", alleges as follows that;

76. Whether *de facto* and/or *de jure* and once the adjudication was made and the order appointing the conservator signed on October 23, 2007, Defendant D. Randy Kennedy became JDT's "Superior/Supreme/Ultimate Guardian" entrusted with the daily administration and ministerial duties of and for administering to JDT's ongoing guardianship.

77. By virtue of the existing special relationship between Defendant and Plaintiff/JDT and existing as guardian/ward, Defendant as guardian owed to Plaintiff as ward – a fiduciary duty and, the ultimate responsibility and absolute common law duty to protect.  Plaintiff – at the time he became the Defendant's 'ward' – owned and possessed a substantial estate in excess of three million ($3,000,000.00) and likewise a professional career which was highly productive and growing, producing approximately three-hundred thousand ($300,000.00) dollars income per year – and with substantial growth projects in the pipeline.

78. On September 7, 2010 the Plaintiff was adjudicated indigent by the Defendant D. Randy Kennedy (see pg. 9 Fact ¶ #20 above) and Plaintiff has been rendered homeless and next-to-penniless by the acts and/or inactions of his Superior/Supreme/Ultimate Guardian who has failed and refused, whether knowingly and intentionally and/or otherwise, to fulfill his absolute

ministerial duty to protect JDT and those of his rights and interests which were in the ultimate

care, custody, control and responsibility of Defendant.

79. As the direct and proximate result of the above and foregoing Plaintiffs have suffered

and continues to suffer damages, loss and injury both actual and consequential, and, continuing

and ongoing at the behest of Defendant D Randy Kennedy who is himself a public nuisance

having done to many others what he has done, conducted and orchestrated be done, to JDT and

to Plaintiffs' commercial entities and pursuits.

**\*\*\*\*\***

80. Plaintiffs reserves the right to supplement, add to and name additional defendants as

those identities become known and as further claims and damages arise and/or accrue.

I hereby verify and affirm that the foregoing facts and representations are true,
correct and within the best of my personal knowledge.

## PRAYER FOR RELIEF

**Wherefore**, Plaintiffs pray for relief as follows;

**A.** Against Defendants of **COUNT I** – for an Order and Judgment declaring

as unconstitutional, both facially and as applied to Plaintiff John Daniel Tate, the practice of

conservatorship as a "Civil Action" which commences upon a presumption of incapacity/

incompetency.  For an Order and Judgment declaring as unconstitutional, both facially and as

applied to Plaintiff John Daniel Tate, TN Code 34-1-121 and the use and application of the "best

interests" standard.  For an Order and Judgment declaring as unconstitutional and discriminatory

in violation of due process of law, equal protection under the law and Title II of The Americans'
With Disabilities Act as applied to Plaintiff John Daniel Tate - a qualified individual with a
disability or perceived disability, a TN conservatorship process which does not adequately
protect and preserve equal access to the courts --- to the benefit of the services programs and
activities of the TN State courts and equal access to a meaningful and adequate review and
appeal process; and, for an Order and Judgment declaring as unconstitutional, both facially and
as applied to Plaintiff John Daniel Tate, a TN conservatorship process which adequately protects
and safeguards – in keeping with the duty to protect – the right to conflict free representation.

   For an Order and Judgment finding the conservatorship of Plaintiff John Daniel Tate to
have been unconstitutional and violated Plaintiff's right to due process of law, and for an Order
and Judgment  enjoining the Defendants' from enforcing their unconstitutional orders and
judgments.

   As against the Defendants of **COUNT I** – "Probate Division", D. Randy Kennedy and
David E. Tate as appointed conservator -- for an Order and Judgment declaring that the
Defendant "Probate Division" is not a forum which provides impartial tribunals and procedures
which comport with due process, and in particular finding and declaring -- that while under the
control and supervision of Defendant D. Randy Kennedy in particular, and as applied to Plaintiff
John Daniel Tate, the practices policies and procedures utilized and relied upon by Defendant
Kennedy both as Judge in and during the adjudicatory phase and as "Superior/Supreme/Ultimate
Guardian" in and during the ministerial and administrative phase, are/were constitutionally
inadequate and resulted in Plaintiff John Daniel Tate being denied his personal liberty, property
and fundamental rights in violation of due process of law and equal protection under the law.

   For an Order and Judgment, upon the foregoing, enjoining and prohibiting the

Defendants' from enforcing the unconstitutional orders and judgments of the "Probate Division" as the same were made and entered in the conservatorship proceedings of Plaintiff John Daniel Tate.

**B.** As against the Defendants of **COUNT I** and due in fact that no Eleventh Amendment immunity is available for violations of Title II of The Americans' With Disabilities Act – for an Order and award of compensatory damages as determined by a jury.

**C.** As against the Defendants of **COUNT II** – for an Order and Judgment in favor of Plaintiffs and against the Defendants for the acts and conducts complained of and for an award of compensatory, special, treble where applicable, and putative damages all as determined by a jury.

**D.** As against the Defendant of **COUNT III** – for an Order and Judgment in favor of Plaintiff John Daniel Tate and against the Defendant for the acts and conducts complained of and for an award of both actual and consequential damages as provided by law and as determined by a jury.

**E.** As against the Defendant of **COUNT IV** – for an Order and Judgment in favor of Plaintiffs and against the Defendant for the acts and conducts complained of and for an award of compensatory, special, treble where applicable, and putative damages all as determined by a jury.

**F.** As against the Defendants of **COUNT V** – for an Order and Judgment in favor of Plaintiffs and against the Defendants for the acts and conducts complained of and for an award of compensatory, special, treble where applicable, and putative damages all as determined by a jury.

**G.** As against the Defendants of **COUNT VI** – for an Order and Judgment in favor of Plaintiffs and against the Defendants for the acts and conducts complained of and for an award of compensatory, special, and putative damages all as determined by a jury.

**H.** As against the Defendant of **COUNT VII** – D. Randy Kennedy and as "Superior/ Supreme/Ultimate Guardian" -- for an Order and Judgment in favor of Plaintiffs and against the Defendant D. Randy Kennedy for the acts and conducts complained of and for an award of compensatory, special, and putative damages all as determined by a jury.

**I.** And for all just proper and appropriate relief upon these premises and as determined by this Court.

Respectfully submitted,

Dated: July 18, 2012

John Daniel Tate, d/b/a "Danny Tate"
"Back Door To Heaven Music Publishing"
"Come On In Music Publishing"
"The Tate Music Group"
"Airstream Productions"
John Daniel Tate